

Robert G. Furst
4400 North Scottsdale Road, #9-859
Scottsdale, Arizona 85251
(602) 377-3702
rgfurst@aol.com

Plaintiff *Pro Per*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

Robert Furst,

                  Plaintiff,

vs.

Estate of Hanna Furst,

                  Defendant.

Case No. CV22-2874-PA (PVCx)

**COMPLAINT**

**(Jury Trial Requested)**

## I.   Preliminary Statement

1.  This Complaint arises out of monetary advances made by Robert Furst to Hanna Furst, his elderly mother, to provide for her support after a debilitating stroke left her paralyzed and bedridden in 2019.

2.  Hanna Furst had substantial assets to pay these support expenses by herself, but her estranged daughter, Linda Mayne, froze her assets in 2019, so that they were unavailable to her when needed.

3.  Hanna Furst died on April 14, 2022, and Robert Furst is entitled to reimbursement of these advances from her estate, pursuant to (a) the express terms of the written financial power of attorney document executed by Hanna Furst, in which she

appointed Robert Furst as her agent, (b) California Civil Code Section 38, and (c) the doctrine of unjust enrichment.

## II. Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

5. This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(A).

6. The amount in controversy, without interest or cost, exceeds the sum or value specified by U.S.C. § 1332.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because most of the events giving rise to the claims occurred in this District.

## III. The Parties

### A. Plaintiff

8. Plaintiff Robert Furst is a resident of Maricopa County, Arizona,

### B. Defendant

9. Defendant Estate of Hanna Furst resides in Los Angeles County, California. Hanna Furst resided in Santa Monica, California, until she died on April 14, 2022.

## IV. Relevant Facts

### A. Background Facts

10. David Furst ("David"), and Hanna Furst ("Hanna"), resided in Phoenix, Arizona, from 1949 through until 2019.

11. David and Hanna had two children, namely, their son, Robert Furst ("Robert"), born on May 8, 1951, and their daughter, Linda Mayne ("Linda"), born on February 7, 1953.

12. Robert was a respected estate planning and pension planning attorney in California and Arizona, and he is now retired.

13. Linda was not nearly as accomplished as Robert and blamed her parents, particularly her mother, Hanna, for not encouraging her to be more successful in school.

14. Throughout her life, Linda constantly complained that her parents, particularly her mother, loved Robert more than her.

15. Linda resented Hanna's strong preference of Robert over her; and, in response, Linda insulted, disrespected and hurt Hanna throughout her life

16. Linda made several reckless and humiliating personal decisions after her college years, and she left Phoenix with her reputation in disgrace in 1982.

**B.   Linda unlawfully seized control of David and Hanna's assets.**

17. In 1988, David and Hanna established the Furst Family Trust (the "Family Trust"), a revocable estate planning trust in which they were the Trustors, the Co-Trustees and the primary beneficiaries.

18. David and Hanna transferred most of their assets to the Family Trust, including their personal residence and their diversified portfolio consisting of stocks, bonds and cash.

19. In addition, David and Hanna formed DHF Corporation, an Arizona corporation, in which David was the sole employee.

20. Upon information and belief, David and Hanna were the Co-Trustees of the DHF Corporation Profit Sharing Plan (the "Plan").

21. David was the sole plan participant of the Plan.

22. In February 2018, Linda flew from San Francisco to Phoenix and tricked her parents into signing several estate planning documents in which they unwittingly transferred total control of their assets to Linda.

23. Linda had secretly arranged for a notary public to meet her at her parents' home.

24. Upon arrival, Linda told her parents that she wanted to assist them in handling their financial assets so that they would not "bounce" any checks.

25. Linda handed her parents a trust amendment for the Family Trust in which Linda and Robert were appointed as the new Co-Trustees replacing David and Hanna.

26. Linda told her parents that the family trust amendment was required by TD Ameritrade in order for Linda to help them pay their bills in a timely manner and would be used solely for that purpose.

27. Linda also handed her parents a corporate resolution for DHF Corporation in which Linda and Robert were appointed as the new Co-Trustees of the Plan replacing David and Hanna.

28. Linda told her parents that the corporate resolution was required by TD Ameritrade in order for Linda to help them pay their bills in a timely manner and would be used solely for that purpose.

29. Linda also handed her parents two general durable financial powers of attorney in which Linda was appointed as each parent's agent for financial matters.

30. Linda told her parents that the general durable powers of attorney would be used by Linda to help them pay their bills in a timely manner and would be used solely for that purpose.

31. Linda directed her parents to sign the family trust amendment, the corporate resolution and the general durable financial powers of attorney.

32. Unfortunately, Linda had a hidden agenda.

33. Linda believed that her parents had more than enough assets to support their lifestyle for their remaining lifetimes, and she did not want to wait until they died in order to receive her inheritance.

34. Linda stole certain assets from her parents, coerced gifts of other assets from them, and then approached Robert with her scheme to distribute significant assets of their parents to themselves before her parents died.

35. When David and Hanna discovered what had transpired, they were furious with Linda, and the family dynamic became David, Hanna and Robert in a united front against Linda.

36. On January 30, 2019, David died.

37. At the time of David's death, Hanna was residing at The Gardens of Scottsdale, an assisted living facility.

38. Shortly after David's death, on February 6, 2019, Linda contacted TD Ameritrade and instructed them to "freeze" all of the assets in the Family Trust's brokerage account, which consisted of approximately $660,000 in cash.

39. In addition, Linda instructed TD Ameritrade to "freeze" all of the assets in the brokerage account maintained by the DHF Corporation Profit Sharing Plan, which consisted of approximately $400,000 in cash.

40. Upon David's death, the Family Trust was supposed to be divided into separate sub-trusts, with David's one-half community property interest to be allocated to the Exemption Trust, which would be irrevocable, and Hanna's one-half community property interest to be allocated to the Survivor's Trust, which would be revocable and amendable by Hanna during her remaining lifetime.

41. However, Linda would not allow the division of the Trust Estate into the Exemption Trust and the Survivor's Trust, because Linda did not want to give Hanna, as the Surviving Trustor, the ability to revoke or amend the Survivor's Trust (or otherwise change her estate plan to Linda's detriment), or to withdraw funds from the Survivor's Trust upon request.

42. Pursuant to the express terms of the Family Trust, from and after David's death, the Survivor's Trust was supposed to be distributed as follows:

    a. The net income of the Survivor's Trust was to be distributed to or for Hanna's benefit in convenient installments;

    b. The principal of the Survivor's Trust was to be paid to Hanna or applied for her benefit as she might request; and

    c. The principal of the Survivor's Trust was to be applied by the Co-Trustees for the support, comfort, care or maintenance of Hanna.

43. Pursuant to the express terms of the Family Trust, from and after David's death, the Exemption Trust was supposed to be distributed as follows:

a. The net income of the Exemption Trust was supposed to be distributed to Hanna no less frequently than annually; and

b. The principal of the Exemption Trust was supposed to be paid to Hanna or applied for Hanna's benefit for her health, support and maintenance.

44. Linda's refusal to cooperate with Robert in connection with the administration of the Family Trust prevented the creation of the Survivor's Trust and prevented the use of the income and principal of the Survivor's Trust and the Exemption Trust for Hanna, in the manner contemplated by the settlors (David and Hanna) when they created the Family Trust.

45. Hanna wanted Linda to relinquish fiduciary control over her assets, which Linda had wrongfully obtained through coercion, undue influence and fraud, but Linda refused.

46. On February 15, 2019, Hanna Furst stated to her physician:

> And now I have one child [Linda] that's spending 24 hours a day that she can have power of attorney to decide if I should live or die and let me tell you, I might die from this, but with every breath of my body, I'm going to fight this ...

47. On February 23, 2019, Hanna executed a Financial Durable General Power of Attorney (the "Financial POA") appointing Robert as her Agent for financial matters.

48. Under the Financial POA, Hanna granted Robert the authority "[t]o do all acts necessary for maintaining [Hanna's] customary standard of living."

49. Under the Financial POA, Robert is entitled to reimbursement of all reasonable expenses incurred as a result of carrying out any of the provisions of the Financial POA.

50. On or about March 31, 2019, while residing in an assisted living facility in Scottsdale, Arizona, Hanna suffered a stroke which left her paralyzed on her right side.

51. In early May 2019, Hanna was transported from Scottsdale to Los Angeles to begin rehabilitation from her stroke at the Rehabilitation Centre of Beverly Hills.

52. From May 2019 through September 11, 2019, while Hanna resided in Los Angeles, Linda continued to refuse to cooperate with Robert in administering the Family Trust.

53. As a result, the assets of the Family Trust were not made available to Hanna to defray her monthly living expenses, including her rent, groceries, 24/7 home nursing care, prescription drugs, medical equipment and medical supplies.

54. Upon Hanna's request, and in reliance on representations from Linda, Robert advanced his own personal funds to Hanna to pay for her support, care and maintenance.

55. In September 2019, a successor trustee was appointed for the Furst Family Trust, but trust funds continued to be unavailable for Hanna's support for a period of time because of Linda's prior wrongful actions.

56. Thereafter, upon Hanna's request, and in reliance on representations from the successor trustee, Robert advanced additional personal funds to Hanna to pay for her support, care and maintenance.

57. On April 14, 2022, Hanna died in Santa Monica, California, with Robert at her bedside.

58. To date, Robert has not been reimbursed for the advances previously made by him.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

59. Robert hereby repeats and realleges the allegations set forth in Paragraphs 1 through 58 above, as though fully set forth herein.

60. Hanna wanted to reimburse Robert for all advances made by him for her support, but she was unable to do so because she was prevented from gaining access to her own funds.

61. Through no fault of her own, Hanna breached the written Financial POA by not reimbursing Robert, as her Agent, for all amounts advanced by him for her benefit.

62. Robert has been damaged by Hanna's breaches (which were caused by Linda and the successor trustee) in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## LIABILITY UNDER CALIFORNIA CIVIL CODE SECTION 38

63. Robert hereby repeats and realleges the allegations set forth in Paragraphs 1 through 58 above, as though fully set forth herein.

64. California Civil Code Section 38 provides:

> A person entirely without understanding has no power to make a contract of any kind, but the person is liable for the reasonable value of things furnished to the person necessary for the support of the person or the person's family.

65. Hanna is liable to Robert for the reasonable value of the support furnished to her, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

66. Robert hereby repeats and realleges the allegations set forth in Paragraphs 1 through 58 above, as though fully set forth herein.

67. Hanna received a benefit from Robert's advancement of her support expenses.

68. It is unjust for Hanna or her estate to retain the benefit without restitution to Robert.

69. Robert is entitled to restitution in an amount to be proven at trial.

WHEREFORE, Robert Furst respectfully requests that the Court enter judgment in his favor, as follows:

A. Awarding Robert Furst damages against Defendant for breach of contract, in an amount to be determined at trial;

B. Awarding Robert Furst reimbursement from Defendant for all amounts to which he is entitled under California Civil Code Section 38;

C. Awarding Robert Furst restitution against Defendant for unjust enrichment, in an amount to be determined at trial;

D. Awarding Robert Furst his attorneys' fees and costs incurred herein; and

E. Awarding such further relief as the Court deems just and proper.

DATED: April 25, 2022

_____
Robert G. Furst